## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**IN RE:**                                                    **CIVIL ACTION**

**IN THE MATTER OF**
**$24,230.00 U.S. CURRENCY;**
**$228,880.00 U.S. CURRENCY;**
**2010 ROLLS ROYCE GHOST**
**VIN SCA664S55AUX48642**                    **NO. 20-00227-BAJ-RLB**

### RULING AND ORDER

This action seeks civil forfeiture of certain property derived from illegal drug activities. The Court has already ordered forfeiture and condemnation of one of the Defendant Properties, a 2010 Rolls Royce Ghost, VIN: SCA664S55AUX48642. (*See* Doc. 9, Doc. 11). Now before the Court is the United States' **Motion For Entry Of Default Judgment And For Order Of Forfeiture (Doc. 15)**, seeking a final default judgment forfeiting the two remaining Defendant Properties to the United States, namely the $24,230.00 in U.S. Currency and the $228,880.00 in U.S. Currency seized from potential claimant Francsico Palma on January 19, 2017. No party has appeared before the Court to claim an interest in these remaining Defendant Properties and there are no objections to the Government's motion. For reasons to follow, the Government's motion will be granted.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On April 13, 2020, the United States filed its verified complaint for forfeiture *in rem*, seeking forfeiture to the United States of three properties allegedly traceable

to illegal drug activities, pursuant to 21 U.S.C. § 881(a)(6): namely (1) $24,230.00 in U.S. Currency; (2) $228,880.00 in U.S. Currency; and (3) a 2010 Rolls Royce Ghost, VIN: SCA664S55AUX48642 (collectively, the "Defendant Properties"). (Doc. 1, the "Verified Complaint"). The Defendant Properties were seized from potential claimant Francsico Palma in January 2019, at the conclusion of a multi-year investigation into Mr. Palma's alleged drug-trafficking activities. (*Id.* at pp. 2-4). The Verified Complaint further alleges that the $24,230.00 in U.S. Currency (recovered from a Chevy Tahoe registered to Mr. Palma's girlfriend) and the $228,880.00 in U.S. Currency (recovered from Mr. Palma's residence) are drug monies, and that the Rolls Royce was purchased with drug money. (*Id.* at pp. 4-5).

On April 15, 2020, the United States sent written notice of the Verified Complaint by certified U.S. Mail to Mr. Palma, who reasonably appeared to be a potential claimant, pursuant to Rule G(4)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure ("Supplemental Rule G"). (Doc. 15-2, Doc. 15-3, Doc. 15-4). This written notice was delivered to Mr. Palma's counsel on April 16, 2020. (Doc. 15-4). Consistent with Supplemental Rules G(4)(b)(i) and G(5)(a), the United States' April 15 notice letter advised that any claimant to the Defendant Properties was required to "file a verified claim within 35 days after the date of this notice, if the notice is delivered by mail." (Doc. 15-3 at ¶ 3).[1]

On July 8, 2020, the United States posted notice of the Verified Complaint to

---

[1] According to the Government, this 35-day period for filing a claim was temporarily extended at the request of Mr. Palma's counsel. (Doc. 15 at p. 2).

http://www.forfeiture.gov, a U.S. Department of Justice forfeiture website, pursuant to Supplemental Rule G(4)(a)(iv)(C). (Doc. 15-5). This internet notice ran for 30 consecutive days, and advised that any claimant to the Defendant Properties was required to file a verified claim within 60 days from the first day of publication—*i.e.*, not later than September 6, 2020. (*Id.* at p. 1).

On July 16, 2020, the United States sent written notice of the Verified Complaint by certified U.S. Mail to Ally Financial, who reasonably appeared to be a potential claimant to the 2010 Rolls Royce Ghost, VIN: SCA664S55AUX48642 ("Defendant Vehicle"), pursuant to Supplemental Rule G(4)(b)(i). (Doc. 15-6). Again, this written notice advised that any claimant to the Defendant Properties was required to "file a verified claim within 35 days after the date of this notice, if the notice is delivered by mail." (Doc. 15-6 at ¶ 3). Thereafter, on August 18, 2020, Ally Financial filed a timely verified claim only to Defendant Vehicle, asserting an interest in the Defendant Vehicle as the lienholder. (Doc. 6). Ally Financial did not assert a claim, interest, or right to the remaining Property Defendants, namely the $24,230.00 in U.S. Currency and the $228,880.00 in U.S. Currency (collectively, the "Defendant Currency"). (*Id.*).

On September 3, 2020, Ally Financial filed a timely and valid answer to the Verified Complaint. (Doc. 7). Consistent with its verified claim, Ally Financial's answer asserted an interest in the Defendant Vehicle only, not the Defendant Currency. (*Id.* at p. 1).

On November 16, 2020, the United States submitted its Unopposed Motion for

3

the Entry of an Interlocutory Sale of the Defendant Vehicle (Doc. 8), seeking authorization to sell the Defendant Vehicle and to deposit the proceeds into an account maintained by the U.S. Marshals Service. (Doc. 8). On November 20, 2020, the Court granted this motion, ordering that the net proceeds realized from the sale of the Defendant Vehicle constitute the "substitute res" for the Defendant Vehicle, and that the "substitute res" be dispersed in accordance Court order. (Doc. 9).

On November 3, 2021, the United States submitted its Unopposed Motion For Order Of Forfeiture, representing that the Defendant Vehicle was sold for a sum of $89,525.00, and seeking disbursement of these funds as follows: 1) $18,083.75 to the U.S. Marshals Service, representing costs and expenses associated with the maintenance, storage, and auction of the Defendant Vehicle; 2) $65,582.80 to Ally Financial as lienholder of the Defendant Vehicle, representing the outstanding principal and interest owed on the Defendant Vehicle; and 3) that the remaining balance of the "substitute res" be forfeited to the United States. (Doc. 10). On December 3, 2021, the Court granted this motion. (Doc. 11).

On December 7, 2021, the United States submitted its Motion For Clerk's Entry Of Default as to the Defendant Currency, pursuant to Federal Rule of Civil Procedure 55(a), on the basis that "[n]o persons or entities have filed a claim to the $24,230.00 in U.S. Currency and the $228,880.00 in U.S. Currency" within the time periods set forth at Supplemental Rule G(5)(a)(ii)(A) and (B). (Doc. 12 at p. 2). The United States supports its motion with the declaration of Assistant U.S. Attorney J. Brady Casey. (Doc. 12-1). On December 8, 2021, the Clerk granted this motion, and

entered default against the Defendant Currency. (Doc. 14).

Since the Clerk's entry of default, no party has filed a claim or an answer for the remaining Defendant Currency, namely the $24,230.00 in U.S. Currency and/or the $228,880.00 in U.S. Currency.[2]

Now before the Court is the United States' Motion For Entry Of Default Judgment And For Order Of Forfeiture (Doc. 15), seeking confirmation of the Clerk's entry of default, and a final judgment forfeiting the Defendant Currency to the United States. (Doc. 15).

## II.    LAW AND ANALYSIS

### A.  Standard

The U.S. Court of Appeals for the Fifth Circuit has adopted a three-step process to obtain a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Next, an entry of default must be entered by the Clerk when the default is shown "by affidavit or otherwise." *See id.* Third, a party may apply for a default judgment after an entry of default. Fed. R. Civ. P. 55(b); *New York Life*, 84 F.3d at 141.

After a party files for a default judgment, the Court applies a two-part analysis to determine whether a final default judgment should be entered. First, the Court

---

[2] The Government represents that on November 1, 2021, counsel for Mr. Palma advised that Mr. Palma would likely not attempt to file a claim or answer to the Defendant Currency. (Doc. 15-1 at p. 3). The Government further represents that "[u]pon information and belief, no person or entity thought to have an interest in the $24,230.00 in U.S. Currency or the $228,880.00 in U.S. Currency is an infant, incompetent, or presently engaged in military service." (*Id.*).

considers whether the entry of default judgment is appropriate based on the factors set forth in *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). These factors are: (1) whether there are material issues of fact at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default have been clearly established, (4) whether the default was caused by excusable neglect or good faith mistake, (5) the harshness of the default judgment, and (6) whether the court would think itself obliged to set aside the default on a motion for relief from the judgment. *Id.*

Second, the Court assesses the merits of the action to determine whether the plaintiff has a claim for relief. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975); *Reyes v. VH Acoustic Ceilings, LLC,* No. 18-cv-00790, 2020 WL 504659, at *2 (M.D. La. Jan. 31, 2020) (Jackson, J.).

### B. Discussion

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Reyes*, 2020 WL 504659, at *2 (citing *Lindsey*, 161 F.3d at 893). Here, however, the United States' Verified Complaint remains unanswered, the Clerk of Court has entered default, and the United States has filed a motion for default judgment. Thus, the procedural requirements for default judgment have been satisfied, *New York Life*, 84 F.3d at 141, and the Court may turn to the merits of the Government's request.

#### i. *Lindsey* Factors

All *Lindsey* factors plainly favor entry of default judgment in the United States'

6

favor.

First, there are no material facts in dispute because no person or entity filed a timely claim to the remaining Defendant Property, namely the $24,230.00 in U.S. Currency and the $228,880.00 in U.S. Currency.

Second, any putative claimants would not be unduly prejudiced by a default judgment because the United States has provided ample opportunity to respond under the requisite procedures. Moreover, as set forth above (*supra* n.2), the only known putative claimant—Mr. Palma—has advised through his attorney he will not file a claim to the remaining Defendant Property.

Third, the grounds for granting a default judgment against any potential claimants are clearly established by this action's factual and procedural history and the Clerk's entry of default.

Fourth, there is no evidence that default was caused by excusable neglect or good faith mistake.

Fifth, an entry of default would not be unduly harsh to any putative claimants because any and all such claimants were provided sufficient notice and opportunity to file a claim to the Defendant Properties based on the direct mailings and the publication on the DOJ website.

Finally, there has been no showing of any facts that would lead the Court to anticipate that it may set aside a default judgment if a claimant appears and contests it.

### ii. Sufficiency of the Pleadings

Second, the merits of the United States' case is strong. Title 21 U.S.C. § 881(a)(6) provides that "[a]ll moneys ... or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance ... [and] all proceeds traceable to such an exchange" are "subject to forfeiture to the United States and no property right shall exist in them." Here, the Verified Complaint sets forth that the Defendant Currency consists of moneys furnished or intended to be furnished by Mr. Palma in exchange for a controlled substance, *or* are proceeds traceable to such an exchange, *or* are moneys used or intended to be used to facilitate a drug offense, in violation of the Controlled Substances Act. Such moneys are unquestionably subject to forfeiture.

Moreover, upon entry of a default judgment in this matter, no one will have an interest in, or claim to, the Defendant Currency. 21 U.S.C. § 881(a)(6). As such, a forfeiture judgment vesting all interests in, claims to, and title to, the Defendant Currency with the United States is warranted.

### III.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the United States' **Motion For Entry Of Default Judgment And For Order Of Forfeiture (Doc. 15)** be and is hereby **GRANTED**.

Judgment shall be issued separately.

Baton Rouge, Louisiana, this 21st day of April, 2022

JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA